IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JUDY GORDON and AXIO
DESIGN, LLC,

              Plaintiffs

     v.

ROBERT A. LEE, BRENDAN C.
MURPHY, BCM CUSTOM HOMES,
INC., a Georgia Corporation, SARAH
M. LEE, CHESAPEAKE
DEVELOPMENT, INC., a Georgia
Corporation, and RAL PROPERTIES
AND DEVELOPMENT, INC.,

           Defendants.

CIVIL ACTION FILE

NO. 1:05-CV-2162-JFK

## ORDER AND WRITTEN OPINION

     In the above-styled copyright infringement case, Plaintiffs have asserted two

causes of action based on Federal law and numerous state law claims.  Plaintiffs have

asserted a claim of copyright infringement under the Copyright Act, 17 U.S.C. § 101,

et seq., and a trademark infringement claim based on the Lanham Act, 15 U.S.C. §

1125.  [Doc. 1, Counts X and XI].  In addition to the federal claims, Plaintiffs'

complaint includes the following claims based on Georgia law: breach of contract

(Counts I and III); tortious interference with contract and business relations (Counts

II and IV); breach of fiduciary duties (Count V); tortious inducement to breach

fiduciary duties (Count VI); misappropriation, trover and conversion (Count VII);

unjust enrichment (Count VIII); piercing the corporate veil/alter ego doctrine (Count

IX); state law trademark infringement (Count XI); violation of the Georgia Uniform

Deceptive Trade Practices Act (Count XII); violation of the Georgia Trade Secrets Act

(Count XIII); violation of Georgia Computer Systems Act (Count XIV); equitable

accounting (Count XV); constructive trust (Count XVI); and attorney's fees (Count

XVII). [Doc. 1].  Defendants Robert Lee and BCM have asserted against Plaintiffs the

following counterclaims: breach of contract (Counts I and II); breach of fiduciary duty

(Count III); equitable accounting (Count IV); declaratory judgment (Count V); breach

of private duty (Count VI); and dissolution of Defendant Axio's corporate status

(Count VII).  [Doc. 8].  This case is presently before the court on a motion [Doc. 52]

for partial summary judgment filed by Plaintiffs and on a motion [Doc. 55] for

summary judgment filed by Defendants.  The predominant issue in both summary

judgment motions is whether Defendants' use of certain residential design plans

constituted copyright infringement.


I.      **Facts**

2

When evaluating the merits of a motion for summary judgment, the court must view the evidence and factual inferences in a light most favorable to the non-moving party. See Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987). However, unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment. See Midwestern Waffles, Inc. v. Waffle House, Inc., 734 F.2d 705, 714 (11th Cir. 1984). Therefore, the evidence presented by the parties having been evaluated in accordance with the foregoing principles, the following facts are deemed to be true for the limited purpose of evaluating Plaintiffs' motion [Doc. 52] for partial summary judgment and Defendants' motion [Doc. 55] for summary judgment.

Plaintiff Judy Gordon is an architect who received her Master's Degree in Architecture from Columbia University. [Plaintiff's Statement of Material Facts ("PSMF") ¶ 3]. She worked as a licensed architect in New York from 1986 until 1997, at which time she moved to Atlanta. [PSMF ¶ 3]. From 1997 to 2000, Plaintiff Gordon taught architectural design studios as a part-time professor at Georgia Tech as well as working part-time for various architectural firms and design studios in Atlanta. [PSMF ¶ 4]. One of the design studios at which Plaintiff Gordon worked in Atlanta was Rice Design Studio. [PSMF ¶ 6]. At the time Plaintiff Gordon worked at Rice

3

Design Studio, Defendant Robert A. Lee and Herman Howard were partners at Rice Design Studio.   [PSMF ¶ 7].   Defendant Lee received a Master's Degree in Architecture from the Georgia Tech in 1999 but has never been licensed as a professional architect.  [PSMF ¶ 8].

In or around September of 2000, Plaintiff Gordon, Defendant Lee, and Howard joined together to form and become partners in The Design Collaborative Kaisen, LLC ("TDC"), in Atlanta.   [PSMF ¶ 1; Gordon Deposition ("Dep.") at 25].   The work initially performed by TDC was architectural design, interior design, and graphic design. [PSMF ¶ 2].  Plaintiff Gordon became a licensed architect in Georgia in 2001. [PSMF ¶ 5].

In late 2000 or early 2001, TDC entered into a joint venture with Defendant BCM Custom Homes ("BCM") to design and build houses in an area of Atlanta called Lynwood Park.  [PSMF ¶ 9; Gordon Dep. at 39].  Defendant Brendan C. Murphy, President of BCM, testified that the TDC/BCM joint venture ("Lynwood Park joint venture") began as follows:

> Robert Lee and I had built one house together.  I became aware of the property in Lynwood Park.  Rob and I both were interested in doing in-town in-fill.  I introduced him to the property, asked him if he wanted to do it with me.  He did, but he wanted to bring in his firm, do it as a partnership between two firms as opposed to he individually.

4

[PSMF ¶ 10; Murphy Dep. at 10-11, 31].  Murphy testified to the following with regard to the terms of the agreement between BCM and TDC:

> We agreed that TDC and BCM would jointly purchase property, jointly get construction loans, TDC would design the homes, TDC would – in the design, would do all the selections of colors and cabinets and flooring and put together a start package, which covers all of those things.  BCM and TDC would jointly manage the construction.  BCM would provide subcontractors, would handle the accounting, and some of the administration.  The administrative duties would be split.

[Murphy Dep. at 33-34].   Plaintiff Gordon characterized the agreement as a "partnership" and testified: "The Lynwood Park Partnership was formed to design and build houses in Lynwood Park. . . .  There was a document produced that outlined the responsibilities of that partnership, and then that partnership was registered with the Secretary of State."   [Gordon Dep. at 39].   Gordon testified, however, that the document was not signed; instead, "[i]t was an understanding that [the parties involved] were moving together on this project."  [Gordon Dep. at 40].

Plaintiff Gordon testified that in approximately July of 2001, a guaranty with SunTrust was signed by Gordon, her husband, Robert Lee, Lee's wife Sarah, and Herman Howard, in order to secure loan monies to purchase properties in Lynwood Park.  [Gordon Dep. at 58, 61, 62, 66].  Gordon testified, "I was asked to look at the

AO 72A

(Rev.8/82)

SunTrust Guaranty and sign it, so that we can buy properties together using the loan monies to buy properties, and together, I mean BCM and TDC." [Gordon Dep. at 58].

Murphy testified that he and Robert Lee agreed that the profits would be split 50-50 and that the "plans were the joint property . . . of the partners, and both groups had rights to these, continuing rights." [Murphy Dep. at 34-35]. Plaintiff Gordon could not recall if she was involved in any discussions with Lee or Murphy about who would own or have the right to the home designs created for the Lynwood Park joint venture. [Gordon Dep. at 83]. Robert Lee testified:

> The agreement was that TDC would provide plans, design services for houses in Lynwood Park. We would provide construction management for houses in Lynwood Park. We would provide marketing services for projects in Lynwood Park. We would provide selection service and start packages for projects in Lynwood Park. We would work with agents and buyers for houses that were being sold. We would all take a financial risk in the project, in terms of loans for the construction of the houses. We would all share in the ownership of plans for the houses that were designed there, and we would all look for new opportunities to build houses.

[Robert Lee Dep. at 47]. Lee also testified that under the terms of the agreement, BCM's responsibilities consisted of the following: "The accounting for the projects out there, construction management for the houses out there, working with buyers, sales agents, marketing, finding new property, reviewing the plans of a design, giving input

6

on those plans." [Robert Lee Dep. at 47-48]. Lee stated that TDC was partially responsible for design and that BCM "gave input on design, types of style of houses, elevations, looks of houses, how big the house should be." [Robert Lee Dep. at 48].

As noted, TDC was formed in September of 2000 by Plaintiff Judy Gordon, Defendant Lee, and Herman Howard. [PSMF ¶ 1]. In the fall of 2001, Howard left TDC at the behest of Plaintiff Gordon and Defendant Lee. [PSMF ¶ 11]. After the departure of Howard, Plaintiff Gordon and Defendant Lee reorganized TDC, redistributed responsibilities between Defendant Lee and Plaintiff Gordon, and renamed it Axio Design, LLC ("Axio"), in 2002. [PSMF ¶ 12].

Plaintiff Gordon testified to the following with regard to her involvement in the Lynwood Park joint venture:

> I helped look for some property over the Internet, because I was looking at some tax records. I didn't do a lot of that at all. I design houses. I did construction sets. I did some permit sets. I did some marketing. I met with . . . potential buyers. . . . Things of that nature, went out and chose light fixtures for homes. . . . I designed houses. I worked on plans, elevations, I supervised – when we were Axio, I supervised employees who were doing construction documents. I worked with Rob [Lee] on some of the design of houses. I showed Brendan [Murphy, BCM President] some plans of the houses. So it was, you know, everyone was taking a look and giving opinions.

AO 72A

(Rev.8/82)

[Gordon Dep. at 42-43].   Plaintiff Gordon further testified that she prepared construction drawings for the homes in the Lynwood Park joint venture, "[a]nd even on some of those drawings, details were used from one project to another that weren't necessarily drawn by me particular.   As I mentioned that this was more of a collaborative effort, and so we were sharing information, as a firm does." [Gordon Dep. at 50].  When Plaintiff Gordon was asked if she was exclusively responsible for any home designs in the Lynwood Park joint venture, she responded: "[E]xclusive is a tough word, because as I mentioned that I would have other people look at it.  So there were houses that I did most of the work for, if you could look at it that way, but I wouldn't use the word exclusive.  Again, because I would have people look at them and give me their opinions on them." [Gordon Dep. at 50].  Lee stated in his affidavit, "I participated in the development and drafting of the Plans and Drawings for the Partnership.  The ten homes designed by the Partnership were given the names Amelia, Avalon, Cedarbrook, Fernwood, Fernwood Alt A, Jonsborough, Lancaster, LaSalle, Presston, and Presston Alt A." [Robert Lee Affidavit ("Aff.") ¶ 6].

Plaintiff Gordon testified that Brendan Murphy's involvement in the design of homes was very limited.  [Gordon Dep. at 53].  Gordon stated that when she finished a plan, she met with Murphy and asked him if there was anything that should be

8

changed.  He would then review the plan and give his opinion.  [Gordon Dep. at 54].

Murphy testified that "BCM had input into designs; did not do the design work itself."

[Murphy Dep. at 27-28].  There was never any written agreement between Gordon and

Lee and Murphy, or between Axio and BCM, establishing ownership rights to the

residential property designs created during the Lynwood Park joint venture.  [PSMF

¶ 17].

In September of 2002, Defendant Lee and Defendant Murphy met with Plaintiff

Gordon at a restaurant in Atlanta.  Lee informed Gordon that he wanted to withdraw

from Axio and pursue a business relationship with Murphy and BCM.  [Robert Lee

Dep. at 104, Ex. 4; Gordon Dep. at 90-92].  During the meeting, Lee handed Gordon

a letter which stated, in part:

> This letter is to serve as my formal notice to withdraw from Axio Design,
> LLC.  I have included in this notice a review of our current company's
> operating agreement given by Harold Hudson as well as a review of my
> corporate responsibility regarding my ability to enter a business
> relationship with Brendan Murphy.  Also included in this notice is a
> proposal for how the assets of Axio Design, LLC should be divided as
> well as a way Axio Design may be removed from the construction
> liabilities in Lynnwood [sic] Park.

[Robert Lee Dep. at 104, Ex. 4; Gordon Dep. at 90].  Lee also wrote, "I had hoped that

we might be able to develop a multi-purpose company combining architecture,

9

construction, and development. . . . But since I have been spending the majority of my time in the construction portion of the business, I realize that this is where I want to focus my efforts." [Id.]. Murphy testified that during the meeting, he told Gordon that "BCM would not continue the relationship with Axio, that we would wrap up what we had ongoing, and that would be it." [Murphy Dep. at 55].

After Defendant Lee's disassociation from Axio, he returned to Axio's offices when Plaintiff Gordon was not there and removed two stand-alone desktop computers, a jacket, some cups, and some books. [PSMF ¶ 18; Robert Lee Dep. at 132-138]. Lee testified that he did not give any compensation for the property removed from Axio's office "because over half the property was left at the office." [Robert Lee Dep. at 138].

Lee and Murphy formed Defendant Chesapeake Development, Inc. ("Chesapeake"), after the dissolution of the Axio/BCM Lynwood Park joint venture. Chesapeake was formed in order to continue building and selling residential properties in Lynwood Park as well as other areas in Atlanta. [PSMF ¶ 16]. BCM and/or Chesapeake built approximately 25 more homes in the Lynwood Park neighborhood. [Defendants' Statement of Material Facts ("DSMF") ¶ 23].

Defendant Sarah Lee is the marketing director for Chesapeake and works on marketing plans for residential properties. Chesapeake's website is under her

10

authority, although she does not manage it. [PSMF ¶ 19; Murphy Dep. at 96-98; Sarah Lee Dep. at 64]. Marketing drawings for houses that were for sale by Chesapeake in Lynwood Park were included on the Chesapeake website for marketing purposes. [PSMF ¶ 20; Defendants' Response ("Def. Resp.") to PSMF ¶ 20; Doc. 72, Ex. E; Robert Lee Aff. ¶ 10]. Murphy stated that BCM authorized Chesapeake to post "marketing Drawings and photographs of the houses on its website." [Murphy Aff. ¶¶ 12, 13].

On May 3 and 5, 2004, Plaintiff Gordon filed Certificates of Registration with the United States Copyright Office for the design plans created during the Lynwood Park joint venture. Gordon listed Axio as the sole author and owner of the works. [Doc. 52, Exs. C, D; DSMF ¶ 22]. On May 3, 2004, Axio residential design plans entitled "Amelia", "Fernwood", "Fernwood Alt A", "Jonsborough", "La Salle", "Presston", and "Presston Alt A" were registered. [PSMF ¶ 21; Doc. 52, Ex. C]. On May 5, 2004, Axio residential design plans entitled "Avalon", "Cedarbrook", and "Lancaster" were registered with the Copyright Office. [PSMF ¶ 22; Doc. 52, Ex. D]. Gordon testified that she sent to the Copyright Office the marketing brochures, the photographs, and the construction documents for each house. [Gordon Dep. at 146-

11

47].  Murphy testified that neither BCM nor Chesapeake has ever applied for copyright

protection for anything.  [Murphy Dep. at 93].

Additional facts will be set forth below as they become necessary for discussion

of the parties' claims.

## II.    Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates the entry of

summary judgment, after adequate time for discovery, against a party "who fails to

make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial."  Celotex

Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

The standard for granting summary judgment mirrors the directed verdict standard

under Rule 50(a), which requires the court to grant a directed verdict where there can

be but one reasonable conclusion.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).

12

The movant bears the initial burden of asserting the basis of its motion, and that burden is a light one.  See Celotex, 477 U.S. at 323, 106 S. Ct. at 2553.  The movant is not required to negate its opponent's claim.  See id.  Rather, the movant may discharge this burden merely by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case."  Id. at 325, 106 S. Ct. at 2554.  When this burden is met, the non-moving party is then required to "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)).

While the evidence and factual inferences are to be viewed in a light most favorable to the non-moving party, see Rollins, 833 F.2d at 1529; Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987), that party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Electrical Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  The non-moving party must come forward with specific facts showing there is a genuine issue for trial.  See id. at 587.  An issue is not genuine if it is created by evidence that is "merely colorable" or is "not significantly probative."  Anderson, 477 U.S. at 249-50, 106 S. Ct. at 2511; accord Young v. General Foods Corp., 840 F.2d

13

825, 828 (11th Cir. 1988).  Similarly, substantive law will identify which facts are material.  See Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.  Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of every element essential to its case.  See Celotex, 477 U.S. at 323, 106 S. Ct. at 2553; Rollins, 833 F.2d at 1528.

## III.    Discussion

Plaintiffs Judy Gordon and Axio Design have asserted two causes of action based on Federal law and numerous state law claims.  Plaintiffs have asserted federal claim of copyright infringement (Count X) and trademark infringement (Count XI) and the following state law claims: breach of contract (Counts I and III); tortious interference with contract and business relations (Counts II and IV); breach of fiduciary duties (Count V); tortious inducement to breach fiduciary duties (Count VI); misappropriation, trover and conversion (Count VII); unjust enrichment (Count VIII); piercing the corporate veil/alter ego doctrine[1] (Count IX); state law trademark infringement (Count XI); violation of the Georgia Uniform Deceptive Trade Practices Act (Count XII); violation of the Georgia Trade Secrets Act (Count XIII); violation of

---

[1]Piercing the corporate veil is a means of imposing liability on an underlying cause of action, but it is not an independent cause of action.  Peacock v. Thomas, 516 U.S. 349, 354, 116 S. Ct. 862, 866, 133 L. Ed. 2d 817 (1996) (citations omitted).

14

Georgia Computer Systems Act (Count XIV); equitable accounting (Count XV); constructive trust (Count XVI); and attorney's fees (Count XVII).   [Doc. 1]. Defendants Robert Lee and BCM have asserted the following counterclaims against Plaintiffs: breach of contract (Counts I and II); breach of fiduciary duty (Count III); equitable accounting (Count IV); declaratory judgment (Count V); breach of private duty (Count VI); and dissolution of Defendant Axio's corporate status (Count VII). [Doc. 8].  Pending before the court is Plaintiffs' motion [Doc. 52] for partial summary judgment and Defendants' motion [Doc. 55] for summary judgment.  The issue upon which both summary judgment motions focus is whether Defendants' use of certain residential design plans constituted copyright infringement.

A.    **Defendant RAL Properties and Development**

Plaintiffs have acknowledged that they named RAL Properties and Development, Inc., as a defendant simply because they received a check erroneously written out to RAL.  Plaintiffs cannot specify any wrongdoing on the part of RAL. Moreover, Plaintiffs do not oppose summary judgment with regard to their claims against Defendant RAL.  [DSMF ¶ 27; Doc. 66].  Accordingly, Defendants' motion [Doc. 55] for summary judgment is **GRANTED** on all of Plaintiffs' claims against Defendant RAL.

15

### B.      Statutory Damages and Attorney's Fees Under the Copyright Act

In Count X of the complaint, Plaintiffs seek statutory damages and attorney's fees pursuant to sections 504 and 505 of the Copyright Act.  [Doc. 1]; 17 U.S.C. §§ 504, 505.  The relevant portion of the Act provides, "[N]o award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."  17 U.S.C. § 412.  Plaintiff Axio registered the disputed residential design plans with the Copyright Office in May of 2004.  [PSMF ¶¶ 21, 22; DSMF ¶ 22].  This was more than a year after Chesapeake was formed and began posting marketing drawings and photographs of houses for sale in Lynwood Park on the company's website.  [PSMF ¶¶ 16, 19, 20].  Because Axio's copyright registration of the design plans occurred more than "three months after the first publication of the work," Plaintiffs are not entitled to an award of statutory damages or attorney's fees as provided by 17 U.S.C. §§ 504 and 505.  Plaintiffs make no argument to the contrary.  [Doc. 65].  Therefore, Defendants' motion [Doc. 55] for summary judgment is **GRANTED** on Plaintiffs' claims for statutory damages and attorney's fee under the Copyright Act as asserted in Count X of their complaint.

16

### C.    Plaintiffs' Copyright Infringement Claim

Plaintiffs Judy Gordon and Axio allege that Defendants impermissibly used copyrighted architectural designs and plans ("designs") in the construction, marketing and sale of homes in the Lynwood Park development. [Doc. 1, Count X].  Defendants make a number of arguments in support of their contention that summary judgment is warranted on Plaintiffs' copyright infringement claim.  Defendants argue that the designs are jointly owned by Defendant BCM and Plaintiff Axio as members of the Lynwood Park joint venture.[2]  [Doc. 55 at 7-11].  Defendants also contend that Defendant Robert Lee, Defendant Brendan Murphy and Plaintiff Gordon are joint authors of the designs. [Doc. 55 at 12-14; Doc. 71 at 6-10].  According to Defendants, Defendant Chesapeake was issued a license to post the designs on its website.  [Doc.

---

[2]Defendants originally argued that individual Defendants Robert Lee, Brendan Murphy, and Sarah Lee are entitled to summary judgment because "they are protected from personal liability by their respective business entities." [Doc. 55 at 4].  Plaintiffs, however, cited to Eleventh Circuit authority holding that individuals who supervise or participate in infringing activity may be held personally liable for copyright infringement. [Doc. 65 at 2].  See Southern Bell Tel. & Tel. Co. v. Assoc. Telephone Directory Publishers, 756 F.2d 801, 811 (11th Cir. 1985).  Defendants apparently abandoned their original argument and now merely assert that Plaintiffs' copyright infringement claim must fail because Lee and Murphy are co-owners of the designs. [Doc. 71 at 2-3].  This argument is address *infra*.  Defendants also argued in their summary judgment motion that the designs were works made for hire for the Lynwood Park joint venture, but they have since abandoned this argument. [Doc. 50 at 11-12; Doc. 71 at 5].

55 at 14-15].  And finally, Defendants contend that even if BCM and Murphy were not joint owners of the designs, they had an implied nonexclusive license to continue to use the works in order to complete the Lynwood Park project.  [Doc. 71 at 3-5]. Plaintiffs have moved for summary judgment in favor of their copyright infringement claim based on their contention that there is no genuine issue of fact as to Defendants' infringing use of the residential designs.  [Doc. 52 at 1-2, 12-13].  On this same basis, Plaintiffs have also moved for summary judgment against Counts I, II, and V of Defendants' counterclaim, which assert claims for breach of contract (Counts I and II) and declaratory judgment (Count V).  [Id.].

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991). The first issue that must be addressed is who initially owned the disputed designs.  The Copyright Act, under a section entitled "Initial Ownership," provides, "Copyright in a work protected under this title vests initially in the author or authors of the work.  The authors of a joint work are coowners of copyright in the work."  17 U.S.C. § 201(a).  The Act defines a "joint work" as a "work prepared by two or more authors with the intention that their contributions be

18

merged into inseparable or interdependent parts of a unitary whole."  17 U.S.C. § 101.

The Eleventh Circuit has noted:

> The terms "inseparable" and "interdependent" may be explained as follows: [I]f author B's contribution when combined with author A's contribution results in recasting, transforming or adapting A's contribution, then the two contributions may be said to be inseparable. If the process is simply one of assembling into a collective whole A's and B's respective contributions, without thereby recasting A's contribution, then the two contributions may be said to be interdependent.

M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1493 (11th Cir. 1990) (quoting 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 6.04 (1989)).  Defendants argue that Plaintiff Judy Gordon and Defendants Robert Lee and Brendan Murphy are joint authors of the designs and, therefore, co-owners of copyright in the designs.  [Doc. 55 at 12].

"As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection."  Community for Creative Non-Violence v. Reid, 490 U.S. 730, 737, 109 S. Ct. 2166, 2171, 104 L. Ed. 2d 811 (1989).  In Childress v. Taylor, 945 F.2d 500, 506-08 (2nd Cir. 1991), the Second Circuit held that a joint authorship claimant was required to prove: (1) that he made a copyrightable contribution to the work; and (2) that the contributors intended to regard themselves as joint authors.  There is no

19

question that the intent of the contributors to a work is relevant and significant. The Copyright Act explicitly provides that joint authors must have intended "that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. See M.G.B. Homes, 903 F.2d at 1492 ("There is no evidence that it was the intent of either Ballough or Unlimited that this concept (the sketch) become part of the finished expression (the architectural plans and drawings). In fact, the sketch did not form an 'inseparable or interdependent' part of the final house drawings.").

With regard to the Childress court's requirement that each joint author must prove that he or she made a copyrightable contribution to the work, there is not a general consensus among the circuit courts about whether the Copyright Act itself provides such a requirement. As even the Childress court recognized, "The [Copyright] Act surely does not say that each contribution to a joint work must be copyrightable, and the specification that there be 'authors' does not necessarily require a copyrightable contribution." Childress, 945 F.2d at 506. Professor Nimmer's position is that while the finished work must be copyrightable, each author's contribution need not be copyrightable. Nimmer on Copyright § 6.07. The Seventh Circuit adopted this viewpoint in Gaiman v. McFarlane, 360 F.3d 644, 658-59 (7th Cir.

20

2004), and noted that while "[t]here has to be some original expression contributed by anyone who claims to be a co-author," the requirement that each contribution be independently copyrightable leads to paradoxical results in some situations. The contributors' joint labors may have sufficient originality and creativity to be copyrightable, but no single individual's contributions would be copyrightable. Id. In such a situation, under the holding in Childress, no one could claim a copyright in the work.

For these reasons, the court finds the reasoning of Professor Nimmer and the Seventh Circuit to be persuasive.[3]  A joint author is not required to establish that his

---

[3]The Eleventh Circuit has not offered a discussion on whether an individual's contribution to a finished work must be copyrightable in order to be considered a joint author.  In Childress, the Sixth Circuit cited M.G.B. Homes, 903 F.2d at 1494, in support of its conclusion that the "case law supports a requirement of copyrightability of each contribution."  Childress, 945 F.2d at 506.  The Sixth Circuit's statement appears to be based on a misreading of the Eleventh Circuit's holding in M.G.B. Homes.  In that case, a home builder sued a competitor for copyright infringement of a floor plan.  The floor plan was created by an architectural firm at the request of the plaintiff builder.  The builder's president had submitted a thumbnail sketch to the architectural firm in order to describe the type of floor plan that he desired.  One of the issues addressed by the court was whether the home builder was a co-author of the floor plan.  The Eleventh Circuit found that the home builder was not a co-author because *inter alia* his ideas "were not copyrightable."  M.G.B. Homes, 903 F.2d at 1493.  The context of the case makes it clear that the court was emphasizing the fact that copyright protection does not extend to ideas or concepts.  In support of its statement that the home builder's ideas were not copyrightable, the court cited to the portion of the Copyright Act which provides, "In no case does copyright protection for

or her contribution to a work was independently copyrightable.  Instead, a joint author

claimant must show that he or she contributed to the work some original expression

which became "part of the finished expression" and that the contributors intended to

be joint authors.  The court will apply this standard to the present case in determining

whether Murphy, Lee or Gordon were joint authors of the residential designs.

Defendant Murphy testified that he is not an architect and has had not education

or background in design work.  [Murphy Dep. at 27].  He also stated that "BCM had

input into designs; did not do the design work itself."  [Murphy Dep. at 27-28].

Plaintiff Gordon's testimony on this issue was similar, as she stated that Murphy's

involvement in the design of homes was very limited.  [Gordon Dep. at 53].  Gordon

testified that when she finished a plan, she met with Murphy and asked him if there

was anything that should be changed.  He would then review the plan and give his

opinion.  [Gordon Dep. at 54].  There is no evidence that Murphy contributed some

---

an original work of authorship extend to any idea, . . . [or] concept. . . ."  17 U.S.C. §
102(b).  Ideas or concepts behind a finished work are not entitled to copyright
protection because they are not contributions which have been "merged into
inseparable or interdependent parts of a unitary whole."  17 U.S.C. § 101.  The
Eleventh Circuit found that the builder was not a co-author because the builder's
thumbnail sketch was a concept, not a contribution to the final house drawings.
M.G.B. Homes, 903 F.2d at 1493.  The court did not address the issue of whether a
contribution to a finished work needed to be copyrightable.  Id.

original expression to the finished designs, only that he offered his advice to those actually performing the design work. It is also apparent that the contributors did not intend for Murphy, who has no education or background in architecture or design work, to be a joint author of the design plans. Given these facts, the undersigned concludes that Defendant Murphy was not a joint author of the designs. As a result, neither Murphy nor BCM had initial co-ownership of copyright in the designs.

The next issue that must be addressed is whether Defendant Robert Lee was a joint author of the designs. Lee and Gordon (along with Herman Howard) joined together in approximately September of 2000 to form TDC, in order to perform architectural design, interior design, and graphic design. [PSMF ¶¶ 1, 2]. Lee stated in his affidavit, "I participated in the development and drafting of the Plans and Drawings for the [Lynwood Park] Partnership." [Robert Lee Aff. ¶ 6]. Plaintiff Gordon confirmed that she worked extensively with Lee in producing the residential designs for the Lynwood Park project. She testified, "I designed houses. I worked on plans, elevations, I supervised – when we were Axio, I supervised employees who were doing construction documents. I worked with Rob [Lee] on some of the design of houses." [Gordon Dep. at 43]. Plaintiff Gordon further testified, "And even on some of those drawings, details were used from one project to another that weren't

23

necessarily drawn by me particular.  As I mentioned that this was more of a collaborative effort, and so we were sharing information, as a firm does." [Gordon Dep. at 50].  When Plaintiff Gordon was asked if she was exclusively responsible for any home designs in the Lynwood Park joint venture, she responded: "[E]xclusive is a tough word, because as I mentioned that I would have other people look at it.  So there were houses that I did most of the work for, if you could look at it that way, but I wouldn't use the word exclusive." [Gordon Dep. at 50].

The court finds that Lee and Gordon were joint authors of the residential designs created for the Lynwood Park project.  As partners in the design firm of TDC, both Lee and Gordon have Master's Degrees in Architecture and worked together to produce the designs.  Neither person was exclusively responsible for any of the designs, and details were used from one design to another.  Plaintiff Gordon stated that the design process was a collaborative effort which involved sharing information within the firm. [Gordon Dep. at 50].  These facts establish that Lee and Gordon were both authors who made contributions to the finished copyrightable designs.[4]

_____

[4]The court finds that even assuming *arguendo* that the court adopted and used the "copyrightability" test, the outcome would be the same with regard to Lee, Gordon and Murphy.  Murphy is not an architect, and he made no copyrightable contributions to the residential designs.  Both Lee and Gordon, on the other hand, were partners in the design firm that produced the designs, and both contributed copyrightable work to

AO 72A

(Rev.8/82)

Pursuant to the Copyright Act's definition of a "joint work," the court must next determine whether Lee and Gordon prepared the designs "with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101.  As discussed *supra*, another way of phrasing this issue is whether Lee and Gordon intended to regard themselves as joint authors.  Plaintiff Gordon argues that she and Lee did not intend to be joint authors but that Gordon alone would be the author of the designs.  Plaintiff argues:

> [I]t is clear from the evidentiary record that Ms. Gordon intended the designs to be owned by Axio, seeing as she stated to Defendant Lee that she considered the plans to be the property of Axio, she insisted that the Lynwood Park marketing brochures and construction documents used in the brochure, contain a copyright designation in the name of Axio, and in May 2004, she registered the designs with the United States Copyright Office in the name of Axio.

[Doc. 65 at 13].

This argument is unpersuasive for a number of reasons.  Plaintiff claims that she intended for the designs to be owned by Axio.  The relevant issue, however, is not whether Plaintiff Gordon intended for a certain firm to own the designs, but whether she and Defendant Lee intended to be joint authors.  The fact that Gordon allegedly wanted Axio to own the designs is not germane to any issue before the court.

them.

25

Moreover, as Defendants point out, Axio was not even in existence at the time Lee and Gordon began creating the designs for the Lynwood Park project. [Doc. 71 at 9]. TDC was formed in September of 2000, and within a few months, the firm entered into a joint venture with BCM to design and build homes in Lynwood Park. [PSMF ¶¶ 1, 9; Gordon Dep. at 39]. Gordon and Lee then began creating the Lynwood Park designs as partners in the firm of TDC. Axio was not formed until 2002, long after the Lynwood Park project had been underway. [PSMF ¶ 12]. Thus, it is not possible that Gordon could have intended for Axio to own the designs when she and Lee began creating them, because Axio did not exist.

Even if Axio's ownership of the designs were relevant, this fact would not support Plaintiff Gordon's argument that Lee has no ownership rights in the designs. There is no dispute that during the time the designs were created, both Lee and Gordon were partners in the two firms which were creating the designs, TDC and Axio. Plaintiff Gordon claims that she considered the plans to be the property of Axio and that she insisted that the Lynwood Park brochures and documents contain a copyright designation in the name of Axio. But this allegation is further evidence that Gordon and Lee, as partners in TDC and Axio, intended to regard themselves as joint authors of the designs.

26

The evidence presented by the parties establishes that Lee and Gordon prepared the designs "with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. A reasonable factfinder would necessarily conclude that Lee and Gordon contributed original expression which became part of the finished designs and that, as partners within TDC and Axio, they intended to be joint authors. Lee and Gordon are joint authors of the residential designs created for the Lynwood Park project, and as a result, pursuant to the Copyright Act, they are co-owners of copyright in the designs. 17 U.S.C. § 201(a) ("Copyright in a work protected under this title vests initially in the author or authors of the work. The authors of a joint work are coowners of copyright in the work.").

"A co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright." Oddo v. Ries, 743 F.2d 630, 632-33 (9th Cir. 1984) (citations omitted). Because Lee and Gordon are co-owners of the copyright in the designs, neither can be liable for copyright infringement. Summary judgment, therefore, is warranted on the copyright infringement claim asserted by Plaintiffs Gordon and Axio against Defendant Robert Lee.

As discussed *supra*, because Defendant Murphy, President of BCM, was not a joint author of the designs, neither Murphy nor BCM had initial co-ownership of

copyright in the designs.   Defendants argue, however, that BCM obtained co-ownership of the copyright in the designs when Defendants Lee and Murphy verbally agreed that BCM would become a copyright co-owner at the time the Lynwood Park joint venture was being formed between TDC and BCM.  [Doc. 55 at 10].  Murphy testified that he and Lee agreed that the residential design "plans were the joint property . . . of the partners, and both groups had rights to these, continuing rights." [Murphy Dep. at 34-35].  Defendant Lee likewise testified that he, Gordon, Herman Howard and Murphy agreed that "[w]e would all share in the ownership of plans for the houses that were designed there. . . ."  [Robert Lee Dep. at 47].  This testimony establishes that Murphy and Lee verbally agreed that TDC and BCM would be co-owners of the copyright in the residential plans that were designed for the Lynwood Park project.[5]

The next issue that must be addressed is whether the verbal agreement between Lee and Murphy validly transferred co-ownership of the copyright to Murphy.

---

[5]Plaintiff Gordon argues that "[t]here is a material factual dispute as to whether Defendants Lee and Murphy, and Plaintiff Judy Gordon, ever agreed that the residential property designs created by TDC/Axio would be jointly owned by Axio and BCM."  [Doc. 65 at 5].  The court finds this argument unpersuasive.  Murphy and Lee testified that there was a verbal agreement about the ownership of the designs, and Plaintiff Gordon testified that she could not recall any such discussions. [Gordon Dep. at 83].  Thus, the testimony of Murphy and Lee remains unrebutted on this issue.

AO 72A

(Rev.8/82)

Defendants argue that a valid transfer took place: "Mr. Lee bound TDC/Axio to the Partnership agreement with BCM providing that all home designs for the Partnership would be jointly owned." [Doc. 55 at 10]. The problem with Defendants' argument is that the Copyright Act explicitly provides that transfer of copyright ownership must be in writing for it to be valid. The Act states, "A transfer of copyright ownership . . . is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."  17 U.S.C. § 204.  Plaintiff correctly argues that because neither Gordon nor Lee, co-owners of the copyright, "ever executed such a document in favor of Defendants Murphy or BCM," a valid transfer of copyright ownership never took place.  [Doc. 65 at 9].  Defendants Murphy and BCM never obtained ownership of the copyright in the designs.

This fact, however, does not establish that Murphy and BCM had no rights to use the designs. The Copyright Act defines a "transfer of copyright ownership" as "an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright . . . , but not including a nonexclusive license." 17 U.S.C. § 101. Because a copyright ownership transfer (which must be in writing) does not include a nonexclusive license,

29

courts have held that a nonexclusive license may be granted without a written instrument.  See Jacob Maxwell, Inc. v. Veeck, 110 F.3d 749 (11th Cir. 1997); I.A.E., Inc. v. Shaver, 74 F.3d 768 (7th Cir. 1996).

"[I]n the case of an implied nonexclusive license, the licensor-creator of the work, by granting an implied nonexclusive license, does not transfer ownership of the copyright to the licensee.  The copyright owner simply permits the use of a copyright work in a particular manner."  I.A.E., 74 F.3d at 775.  "[E]ach co-owner has an independent right to use or license the use of the copyright."  Oddo, 743 F.2d at 632-33.  "Although a person holding a nonexclusive license has no standing to sue for copyright infringement, the existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement."  I.A.E., 74 F.3d at 775 (citations omitted).  Because Plaintiff Gordon and Defendant Lee are co-owners of the copyright in the residential designs, both of them have the right to grant licenses to use the copyrighted designs.  The court turns next to the issue of whether Defendant Lee granted an implied nonexclusive license to Defendants Murphy and BCM, or to any other Defendants.  If an implied nonexclusive license was granted, then Plaintiffs' copyright infringement claim cannot survive summary judgment as to these Defendants.

A "nonexclusive license may be granted orally, or may even be implied from conduct."  I.A.E., 74 F.3d at 775 (quoting 3 Nimmer § 10.03) (internal quotations omitted).  "[C]onsent given in the form of mere permission or lack of objection" is sufficient to establish that the copyright owner has granted a nonexclusive license.  Id.  The evidence establishes that Defendants Murphy and BCM, as well as Defendants Chesapeake Development and Sarah Lee, were granted by Defendant Robert Lee a nonexclusive license to use the residential designs.  Defendant Lee (along with Plaintiff Gordon) agreed with Defendant Murphy to form a joint venture between their respective companies, TDC and BCM.  [PSMF ¶¶ 9, 10].  Lee allowed Murphy to review and provide input on the designs, and as part of the joint venture, Lee gave express permission to Murphy and BCM to use the designs to build houses in Lynwood Park.  [Robert Lee Dep. at 47-48].  Both Murphy and Lee testified that they agreed that TDC, BCM, and the companies' partners had the right to use the designs.[6]  [Murphy Dep. at 34-35; Robert Lee Dep. at 47].  There is no question that Defendant Lee granted Murphy and BCM a nonexclusive license to the designs.

---

[6]Murphy and Lee testified that all the parties involved had *ownership* rights to the designs.  [Murphy Dep. at 34-35; Robert Lee Dep. at 47]. This is legally incorrect because, as discussed *supra*, transfer of copyright ownership can only be made pursuant to a written document.  17 U.S.C. § 204.  Nevertheless, their testimony clearly establishes that Lee granted permission to Murphy and BCM to use the designs.

AO 72A

(Rev.8/82)

Defendant Lee also gave permission to Defendants Chesapeake and Sarah Lee to use the designs.  Chesapeake was formed by Defendant Robert Lee and Murphy in order to continue building and selling residential properties after the dissolution of the TDC-Axio/BCM joint venture.  [PSMF ¶ 16; Robert Lee Aff. ¶ 10].  Robert Lee and Murphy are officers and the only partners in Chesapeake.  [Robert Lee Dep. at 140-41].  Chesapeake's website, which is under the authority of Defendant Sarah Lee, posted marketing drawings and photographs of the houses that were for sale by Chesapeake in Lynwood Park.  [PSMF ¶¶ 19, 20; Murphy Dep. at 96-98; Sarah Lee Dep. at 64; Def. Resp. to PSMF ¶ 20; Doc. 72, Ex. E; Robert Lee Aff. ¶ 10].  Defendant Robert Lee testified that he was involved in the decision to post the drawings and photographs on Chesapeake's website.  [Robert Lee Dep. at 143].  In light of these facts, it is clear that Defendant Robert Lee granted to Defendants Chesapeake and Sarah Lee a nonexclusive license to use the designs.

Plaintiff Judy Gordon and Defendant Robert Lee are joint authors and co-owners of the residential designs at issue.  Because a "co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright," Defendants' summary judgment motion [Doc. 55] is **GRANTED** on Plaintiffs' copyright infringement claim (Count X) against Defendant Robert Lee.  Oddo, 743 F.2d at 632-33.  The evidence

32

establishes that Lee gave permission to Defendants Brendan Murphy, BCM, Chesapeake, and Sarah Lee to use the designs. A reasonable factfinder would necessarily conclude that all of these Defendants held a nonexclusive license. Because the existence of a nonexclusive license creates an affirmative defense to a copyright infringement claim, Defendants' summary judgment motion [Doc. 55] is **GRANTED** on Plaintiffs' copyright infringement claim (Count X) against Defendants Brendan Murphy, BCM, Chesapeake, and Sarah Lee. I.A.E., 74 F.3d at 775.

As noted *supra*, Plaintiffs Judy Gordon and Axio have moved for summary judgment in favor of their copyright infringement claim. [Doc. 52 at 12-13]. Plaintiffs have also moved for summary judgment against Counts I, II, and V of Defendants' counterclaim, which assert claims for breach of contract and declaratory judgment. [Id.]. The entire basis of Plaintiffs' summary judgment motion is that Defendants have engaged in infringing use of the Plaintiffs' copyright in the residential designs at issue. [Id. at 2, 13]. For the reasons discussed, the court finds that a reasonable factfinder could not conclude that Defendants infringed upon the copyright in the residential designs, and Plaintiffs' summary judgment motion [Doc. 52] is **DENIED**.

### D.    Tortious Interference/Inducement Claims

33

In Counts II, IV, and VI of Plaintiffs' complaint, Plaintiffs assert claims of tortious interference with contract and business relations and tortious inducement to breach fiduciary duties. [Doc. 1]. Defendants argue that summary judgment should be granted on these claims because Plaintiffs have not offered any evidence necessary to establish them. [Doc. 55 at 23]. The court agrees, and Plaintiffs make no arguments disputing Defendants' assertions. [Doc. 65]. Claims of tortious interference and tortious inducement of contractual, business, or fiduciary rights require a plaintiff to establish, *inter alia*, that "the defendant acted purposely and with malice and the intent to injure" in procuring a breach of a contractual obligation or a fiduciary duty. Insight Technology, Inc. v. Freightcheck, LLC, 280 Ga. App. 19, 25-26, 633 S.E.2d 373, 378-79 (2006); Culpepper v. Thompson, 254 Ga. App. 569, 571, 562 S.E.2d 837, 840 (2002); Rome Industries, Inc. v. Jonsson, 202 Ga. App. 682, 683, 415 S.E.2d 651, 652 (1992) (plaintiff's claim that defendants induced the corporation's president to breach his fiduciary duty to the corporation fell within category of claims for tortious interference with contractual rights). Because Plaintiffs have offered no evidence that Defendants acted with malice and the requisite intent, Defendants' summary judgment motion [Doc. 55] is **GRANTED** on Plaintiffs' claims of tortious interference with

34

contract and business relations and tortious inducement to breach fiduciary duties (Counts II, IV, and VI).

### E.   Other Claims Based on Defendants' Alleged Copyright Infringement

Plaintiffs have asserted a number of other claims against Defendants which are based on Defendants' alleged infringing use of the copyright in the residential designs. Defendants contend that the same facts relevant to Plaintiffs' copyright infringement claim also support granting summary judgment on Plaintiffs' claims which are based on the Plaintiffs' contention that they have exclusive ownership of the residential designs at issue. [Doc. 55 at 17]. These include Plaintiffs' claim of trademark infringement, deceptive trade practices, and trade secrets violation. [Doc. 1, Counts XI-XIII]. Portions of Plaintiffs' claims for breach of fiduciary duties, misappropriation, and unjust enrichment are also based on Plaintiff's claim to exclusive ownership of the designs. [Doc. 1, Counts V, VII, VIII]. With respect to Plaintiffs' trademark infringement claim, Defendants also argue, "Plaintiffs fail to present any evidence that Defendants used a mark similar to the one that Plaintiffs owned and registered with the U.S. Patent and Trademark Office." [Doc. 55 at 18].

Plaintiffs have offered no argument to the contrary on any of these issues.[7]  [Doc. 65].

As discussed *supra*, the court has found that all Defendants have either joint ownership

of the copyright in the designs or a license to use the designs.   Accordingly,

Defendants' summary judgment motion [Doc. 55] is **GRANTED** on Plaintiffs' claims

of trademark infringement, deceptive trade practices, and trade secrets violation. [Doc.

1, Counts XI-XIII].   Defendants' summary judgment motion [Doc. 55] is also

**GRANTED** on Plaintiffs' claims for breach of fiduciary duties, misappropriation,

unjust enrichment (Counts V, VII, VIII), to the extent these claims are based on

Defendants' alleged infringing use of the copyright in the residential designs.

---

[7]At the summary judgment stage, the non-movant is required to "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)). By failing to respond, Plaintiffs  have obviously failed to carry this burden.

AO 72A

(Rev.8/82)

**F.      Claims Based on Alleged Misappropriation and Conversion**

Plaintiffs Judy Gordon and Axio allege that Defendants misappropriated and converted assets belonging to them.  On the basis of this contention, Plaintiffs have asserted the following claims: breach of contract; breach of fiduciary duties; misappropriation, trover and conversion; unjust enrichment; computer theft; equitable accounting; and constructive trust. [Doc. 1, Counts I, III, V, VII, VIII, XIV-XVI]. Plaintiffs have also asserted the following claims based on Defendants' alleged failure to provide Plaintiff Axio with its portion of the proceeds and/or an accounting of those proceeds from the sale of homes in Lynwood Park: breach of contract; breach of fiduciary duties; misappropriation; equitable accounting; and constructive trust. [Doc. 1, Counts I, III, V, VII, XV, XVI].  Defendants Robert Lee and BCM, on the other hand, allege that it was Plaintiff Judy Gordon who misappropriated and converted Axio assets.  On the basis of this allegation, Defendants Lee and BCM have asserted the following counterclaims: breach of contract; breach of fiduciary duty; equitable accounting; and corporate dissolution of Axio.  [Doc. 8, Counts I, III, IV, VII].

After Defendant Lee's disassociation from Axio in September of 2002, he returned to Axio's offices when Plaintiff Gordon was not there and removed two stand-alone desktop computers, a jacket, some cups, and some books.  [PSMF ¶ 18;

Robert Lee Dep. at 132-138].  Lee testified that he did not give any compensation for the property removed from Axio's office "because over half the property was left at the office." [Robert Lee Dep. at 138].  According to Defendant Lee, he took the assets in an attempt to redeem his 49% interest in Axio.  [Doc. 55 at 19-21].  Lee has provided a document he entitled "Accounting–R. Lee Funds" which lists twelve items consisting mostly of monies Axio allegedly received, paid or owed.  [Robert Lee Aff., Ex. D-2].  The document, which was prepared at Lee's direction, makes no mention of other assets owned by Axio, and it explicitly states that personal monies contributed by Lee to Axio are not included.  [Id.].  With regard to the proceeds from the sale of houses in Lynwood Park, Defendant Lee has attached to his affidavit a document he entitled, "Accounting–Revenues and Costs of Partnership Houses." [Robert Lee Aff., Ex. D-1].  The document was prepared at Lee's direction and lists financial figures for nine houses and entries called "Mulligans" and "Bryant arbitration." [Id.].  He also lists the total amounts owed to Gordon and Axio and states that both have been paid more than they are owed.  [Id.].  Plaintiff Gordon, however, testified that to her knowledge, "Axio has not received 50 percent of the profits from the houses of Lynwood Park." [Gordon Dep. at 133].  According to Gordon, Axio "only received profits for three of those houses, not for all 10 of those houses." [Id.].

38

Both Plaintiffs and Defendants allege that the opposing parties have misappropriated and converted Axio assets, breached contractual obligations, and breached fiduciary duties. [Docs. 1, 8]. Both Plaintiffs and Defendants seek an equitable accounting, and Defendant Lee seeks to dissolve Axio's corporate status. It is not clear from the record evidence exactly what assets belong to Axio and whether those assets have been properly distributed. Moreover, the testimony from Gordon and Lee is contradictory with respect to whether the proceeds from the sale of houses in Lynwood Park have been properly distributed. For all these reasons, the undersigned finds that these genuine issues for trial remain.

Defendants' summary judgment motion [Doc. 55] is **DENIED** on the following Plaintiffs' claims, insofar as they are based on the alleged misappropriation and conversion of Axio's assets and on Defendants' alleged failure to provide Plaintiff Axio with its portion of the proceeds and/or an accounting of those proceeds from the sale of homes in Lynwood Park: breach of contract; breach of fiduciary duties; misappropriation; unjust enrichment; computer theft; equitable accounting; and constructive trust. [Doc. 1, Counts I, III, V, VII, VIII, XIV-XVI].

39

**IV.    Conclusion**

For all the foregoing reasons and cited authority, Defendants' summary judgment motion [Doc. 55] is **GRANTED**: on all of Plaintiffs' claims against Defendant RAL, which is dismissed as a party to this action; on Plaintiffs' claims of tortious interference with contract and business relations (Counts II and IV), tortious inducement to breach fiduciary duties (Count VI), copyright infringement (Count X), trademark infringement (Count XI), deceptive trade practices (Count XII), and trade secrets violation (Count XIII) in their entirety; and on Plaintiffs' claims for breach of fiduciary duties (Count V), misappropriation (Count VII), and unjust enrichment (Count VIII), to the extent these claims are based on Defendants' alleged infringing use of the copyright in the residential designs.

Defendants' summary judgment motion [Doc. 55] is **DENIED** on the following Plaintiffs' claims, insofar as they are based on the alleged misappropriation and conversion of Axio's assets and on Defendants' alleged failure to provide Plaintiff Axio with its portion of the proceeds and/or an accounting of those proceeds from the sale of homes in Lynwood Park: breach of contract (Counts I and III), breach of fiduciary duties (Count V), misappropriation (Count VII), unjust enrichment (Count

40

VIII), computer theft (Count XIV), equitable accounting (Count XV), and constructive trust (Count XVI).

Plaintiffs' summary judgment motion [Doc. 52] is **DENIED**.

Within **ten (10) business days** of entry of this Order, counsel for the parties are **DIRECTED** to confer with one another in an effort to resolve the remaining claims. Thereafter, a conference will be scheduled with the court at the mutual convenience of the parties to report to the court and to address resolution of the remaining claims.

**SO ORDERED**, this 14th day of MAY, 2007.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

41